IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
WESTERN DIVISION

CIVIL ACTION NO: 04-30248-MAP

RUGGERS, INC.,
        Plaintiff,

v.

DHL EXPRESS (USA), INC.,
        Defendant.

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS

Pursuant to Rule 7.1(b)(1) of the Local Rules of the District of Massachusetts, the Defendant, DHL Express (USA), Inc. (hereinafter "DHL"), submits the following memorandum of law in support of its Motion to Dismiss the Complaint.

### I.     Allegations in the Complaint

According to the Complaint, in January of 2002 the Plaintiff, Ruggers, Inc. (hereinafter the "Plaintiff"), purchased some goods from a third party located in Hong Kong. See Compl., § 6. On February 2, 2002, the Plaintiff allegedly instructed that seller to ship a small number of those goods from Hong Kong directly to one of the Plaintiff's customers located in Naples, Florida. See id., §§ 7, 10. It also allegedly instructed it to ship the balance of the goods, which was the larger of the two(2), directly to the Plaintiff in Massachusetts. See id., § 8. According to the Complaint, the seller used DHL as the carrier for both shipments. See id., §§ 9-10. When they arrived in the United States, however, neither of the shipments was accompanied by the necessary visas to clear customs. See id., §§ 9-10, 16.

32919.2

The Plaintiff claims it sustained damages when DHL allegedly failed to comply with the Plaintiff's instructions in using a particular visa for the larger shipment. See id., §§ 11-18. DHL then allegedly returned that shipment to Hong Kong and destroyed it there. See id., ¶ 17. The destruction of those goods forms the basis for the Plaintiff's claimed damages in this case.

## II.   Argument

### A.   Standard for Review

In judging the sufficiency of a complaint on a motion to dismiss, the court must "accept as true all the factual allegations in the complaint." Leatherman v Tarrant County Narcotics Intelligence and Coordination Unit, 507 U.S. 163, 164 (1993); Cooperman v Individual, Inc., 171 F.3d 43, 46 (1st Cir. 1999). Dismissal of a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure must be granted if it appears beyond doubt that the plaintiff will be unable to prove any facts entitling that party to relief even taking all alleged facts in the complaint as true See Analog Devices, Inc. v Allied Van Lines, Inc., 1996 U.S.Dist.LEXIS 5649, at * 2-3 (D.Mass. 1996). Dismissal is warranted when it appears that the plaintiff can prove no set of facts in support of the claim that would entitle him to relief. See Diamond v Premier Capital, Inc. (In re Diamond), 346 F.3d 224, 227 (1st Cir. 2003).

### B.   International shipments subject to Warsaw Convention

The Plaintiff alleges that DHL transported via air two shipments of goods from Hong Kong to the United States. See id. at ¶¶ 6-8. The Plaintiff further alleges that, after approximately one year, DHL returned the larger of the two shipments to Hong Kong and destroyed it there. See id. at ¶ 17. The destruction of the goods from that shipment forms the basis for the Plaintiff's claimed damages in this case. See Compl. Because the subject matter of this lawsuit concerns international shipments, the Plaintiff's claims may be subject to the

- 2 -

32919.2

Warsaw Convention. See Convention for the Unification of Certain Rules Relating to International Transportation by Air, Oct. 12, 1929, 49 Stat. 3000, T.S.No. 876 (1934), reprinted in note following 49 U.S.C. § 40105 (hereinafter "Warsaw Convention" or "Convention"); Bennett Importing Co. v Continental Airlines, Inc., 1988 U.S.Dist.LEXIS 19410, at * 3-4 (D.Mass. Dec. 27, 1988).

### C.     The Scope of the Warsaw Convention

"The cardinal purpose of the Warsaw Convention . . . is to achieve uniformity of rules governing claims arising from international air transportation." Tseng at 169 (internal quotations and citations omitted). It is an international treaty that creates for its member states a presumption of liability against air carriers, but in turn limits that liability substantially. See Vaughn v The Amer. Auto. Assoc., Inc., 326 F.Supp.2d 195, 198-99 (D.Mass. 2004)(omitting internal citations and quotations); Convention. In determining the full reach of the Convention, one must begin with a review of the language of its provisions. See Shah v Pan American World Serv. Inc., 148 F.3d 84, 95 (2d Cir. 1998), cert. denied, Patel v Pan Am, 525 U.S. 1142 (1999); Insur. Co. of N. America v Fed. Express Corp., 189 F.3d 914, 918 (9th Cir. 1999). Article 18 of the Convention describes the scope of an air carrier's liability as follows:

> (1) The carrier shall be liable for damage sustained in the event of the destruction or . . . damage to, any . . . goods, if the occurrence which caused the damage so sustained took place during the transportation by air.
> (2) The transportation by air . . . shall comprise the period during which the baggage or goods are in charge of the carrier, whether in an airport or on board an aircraft, or in the case of a landing outside an airport, in any place whatsoever.
> (3) The period of the transportation by air shall not extend to any transportation by land, by sea, or by river performed outside an airport. If, however, such transportation takes place in the performance of a

32919.2

>contract for transportation by air, for the purpose of loading, delivery or transshipment, any damage is presumed, subject to proof to the contrary, to have been the result of an event that took place during the transportation by air.

Convention, Article 18.

### D. Because the alleged damage to the goods occurred during the "transportation by air," the Plaintiff's claims are subject to the Warsaw Convention.

Even though the Plaintiff has defined its claims against DHL under state common law and statutory law, see Compl., its claims will be governed by the Warsaw Convention if the dispute arises out of actions that took place during the international air transportation of the goods. See Bennett Importing Co. v Contintental Airlines, Inc., 1988 U.S.Dist.LEXIS 19410, at * 3-4 (D.Mass. Dec. 27, 1988). The Warsaw Convention will apply to damages of goods where such damages occurred during the "transportation by air." See Hatzlachh Supply, Inc. v Tradewinds Airways, Ltd., 738 F.Supp. 714, 714-15 (S.D.N.Y. 1990)(citing Article 18(1) of the Convention). "'[T]ransportation by air' is a term of art that includes more than mere air transport." Hatzlachh at 714-15; see also Quantime Corp. v Donovan, 1988 U.S.Dist.LEXIS 4027, at * 10-11 (D.Mass. 1988)(attached hereto).

The Complaint does not indicate whether the alleged damage occurred while the goods were located at an airport. If it did occur there, the damage occurred "during air transportation" under the Warsaw Convention. See Convention, Art. 18(2). If it did not occur there, it may still have occurred "during air transportation," depending upon how much control DHL exercised over the goods, the place of the loss, and whether it occurred during temporary storage. See Bennett, 1988 U.S.Dist.LEXIS 19410, at * 4-5. Under the Convention, even if goods are removed from the premises of an airport for continued transportation over land to the ultimate destination, the period of land transportation is part of the "air transportation" under the

- 4 -

32919.2

Convention. See, e.g., Jaycees Patou, Inc. v Pier Air Intern., Ltd., 714 F.Supp. 81, 84 (S.D.N.Y. 1989)(land transportation beyond airport is included in "transportation by air" under single airway bill).

Even taking the allegations of the Complaint and all inferences therefrom in favor of the Plaintiff, it is indisputable that the goods were at all relevant times under the control of DHL and any "storage" was incidental to the contract for carriage. This fact requires a finding that the alleged destruction occurred during air transportation for purposes of applying the Warsaw Convention to the facts of this case. See, e.g., Bennett Importing Co. v Continental Airlines, 1988 U.S.Dist.LEXIS 19410 (D.Mass. Dec. 27, 1988); Royal Insur. A/s/o IBM World Trade Corp. v Amerford Air Cargo, 654 F.Supp 679 (S.D.N.Y. 1987)(air freight forwarder that warehoused shipment prior to international transportation was in charge of goods and any damages resulting from warehousing occurred during "air transportation")(cited by Bennett, 1988 U.S.Dist.LEXIS 19410, at * 4, and Quantime, 1988 U.S.Dist.LEXIS 4027, at * 13). Any "storage" of the goods by DHL, was temporary and incidental to the task of shipping them. This temporary and incidental storage will not transform DHL into a warehouseman or prevent application of the Warsaw Convention to the Plaintiff's Complaint. See Quantime Corp. v Donovan, 1988 U.S.Dist.LEXIS 4027, at * 13 (D.Mass. 1988); Berman v Trans World Airlines, 421 N.Y.S.2d 291, 293 (1979); Int'l Air Cargo & Baggage Liab. and the Tower of Babel, 36 Geo.Wash.Int'lL.Rev. 239, 288-89 (2004).

Thus, any attempt by the Plaintiff to claim that DHL was a warehouseman and that the Convention is inapplicable will fail. See, e.g., Quantime, 1988 U.S.Dist.LEXIS 4027, at * 11-14 (shipper's request to air carrier to store goods until shipper obtained export license for international shipment did not convert carrier into warehouseman or prevent application of the

32919.2

- 5 -

Warsaw Convention)(attached hereto). As a result, the alleged destruction of the goods occurred during "transportation by air" and any claims based on that alleged destruction are subject to liability limitations contained in the Warsaw Convention.

### E. The Plaintiff's claims must be dismissed because the Warsaw Convention completely preempts the Plaintiff's state law claims.

As an international treaty, the Warsaw Convention is the supreme law of the land. See U.S. Const. art. VI, cl. 2; Chan v Korean Air Lines, 490 U.S. 122 (1989). It completely preempts state law causes of action. See El Al Isr. Airlines v Tseng, 525 U.S. 155, 174-76 (1999); Convention, Art. 24; see also Hansen v Delta Airlines, 2004 U.S.Dist.LEXIS 4150, at * 6-7 (N.D.Ill. Mar. 17, 2004); Husman v TWA, 169 F.3d 1151 (8th Cir. 1999); Shah, 148 F.3d 84; Potter v. Delta Airlines Inc., 98 F.3d 881 (5th Cir. 1996).

Because the Warsaw Convention applies in this case and because the Warsaw Convention completely preempts the Plaintiff's state law claims, they must all be dismissed as failing to state any claim upon which relief may be granted.[1]

### III. Conclusion

For all the foregoing reasons, the Court should dismiss the Plaintiff's Complaint.

---

[1] The Plaintiff's state law claims are also completely preempted under the Airline Deregulation Act. See Airline Deregulation Act ("ADA"), Pub.L.No. 95-504, § 105(a), 92 Stat. 1708 (codified at 49 U.S.C. § 1305(a))("no state . . . shall enact or enforce any law . . . relating to rates, routes, or services . . . .").

Respectfully submitted,

DHL EXPRESS (USA), INC.,

By Its Attorneys,

*/s/ Sara Discepolo*
George C. Rockas, BBO#544009
Sara Discepolo, BBO# 628721
WILSON, ELSER, MOSKOWITZ,
EDELMAN & DICKER, LLP
155 Federal Street
Boston, MA 02110
(617) 422-5300

Dated: December 29, 2004

Get a Document - by Citation - 1988 U.S. Dist. LEXIS 4027

Case 3:04-cv-30248-BGS Document 4 Filed 12/29/2004 Page 8 of 16

Page 1 of 8

Service: Get by LEXSEE®
Citation: 1988 usdistlexis 4027

*1988 U.S. Dist. LEXIS 4027, \**

Quantime Corporation, Plaintiff, v. W. J. Donovan Inc., D/B/A Donovan-Mayflower, and Aero Mayflower Transit Company, Inc., and Emery Air Freight, Inc., Defendants

Civil Action No. 86-1415-N

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS

1988 U.S. Dist. LEXIS 4027

May 3, 1988

**CASE SUMMARY**

**PROCEDURAL POSTURE:** Plaintiff purchaser brought an action against defendants, carrier and air carrier, under the Carmack Amendment, 49 U.S.C.S. § 11707, for loss of a computer disk drive.

**OVERVIEW:** The purchaser ordered the drive for resale and delivery to a customer in Italy. The seller hired the carrier to deliver the equipment to the air carrier. The purchaser asked the air carrier to hold the drive until it could provide an export license. The carriers provided evidence that the disk drive was delivered to the air carrier. When the drive was not delivered to Italy, the purchaser wrote a letter to the claims department. The air carrier refused the claim, stating that it had no record of receiving the drive. The carrier and air carrier contended that the claims were time-barred. The purchaser argued that the carrier was put on notice when it inquired as to the location of the drive. The purchaser sought to avoid the time limitations as to the air carrier by arguing that it acted as a warehouseman. The court granted a judgment in favor of the carriers. The purchaser did not provide written notice to the carrier of its claim until it commenced the suit, after the period for filing a claim expired. The inquiries did not qualify as filing a written claim, and the drive was delivered the air carrier. The purchaser hired the air carrier to transport and not to store goods.

**OUTCOME:** The court granted a judgment in favor of the carrier and air carrier in the action brought by the purchaser.

**CORE TERMS:** disk drive, carrier, transportation, shipment, bill of lading, air, delivery, storage, air carrier, signature, warehouseman, indirect, export license, customer, notice, wick, convention, tariff, statute of limitations, written notice, destination, consignee, contacted, shipping, aircraft, driver, limitations period, arbitrariness, two-year, baggage

**LexisNexis(R) Headnotes** ✦ Hide Headnotes

Transportation Law > Carrier Duties & Liabilities
Governments > Legislation > Statutes of Limitations > Statutes of Limitations Generally
HN1✦ 49 U.S.C.S. § 11707(e) provides that a carrier may not provide by rule, contract, or otherwise, a period of less than nine months for filing a claim against it under this section and a period of less than two years for bringing a civil action against it under this section. The period for bringing a civil action is computed from the date the carrier gives a person written notice that the carrier has disallowed any part of

Get a Document - by Citation - 1988 U.S. Dist. LEXIS 4027    Page 2 of 8

Case 3:04-cv-30248-RGS    Document 4    Filed 12/29/2004    Page 9 of 16

the claim specified in the notice. More Like This Headnote

Transportation Law > Carrier Duties & Liabilities > Rates & Tariffs
Governments > Legislation > Statutes of Limitations > Time Limitations
**HN2** ⯆ If a claim is not brought within the time specified by the relevant tariff, a subsequent action for damages under 49 U.S.C.S. § 11707 is barred. More Like This Headnote

Transportation Law > Carrier Duties & Liabilities > Damages & Reparation
Governments > Legislation > Statutes of Limitations > Time Limitations
**HN3** ⯆ Mere knowledge of damage or loss is not enough to toll the time requirement. Even direct oral notice of claim will not suffice. More Like This Headnote

International Law > Dispute Resolution > Liability Determinations
**HN4** ⯆ Article I of the Warsaw Convention states in part that (1) the convention shall apply to all international transportation of goods performed by aircraft for hire. (2) For the purposes of the convention the expression "international transportation" shall mean any transportation in which, according to the contract made by the parties, the place of departure and the place of destination are situated within the territories of two High Contracting Parties. More Like This Headnote

Transportation Law > Air Transportation > Personal Injury & Property Damage
**HN5** ⯆ Article 18(1) of the Warsaw Convention provides that an air carrier will be liable for damage sustained in the event of the loss of any goods, if the occurrence which caused the damage so sustained took place during the transportation by air. The term "transportation by air" is a term of art and is defined as follows: the transportation by air within the meaning of the preceding paragraph shall comprise the period during which the baggage or goods are in charge of the carrier, whether in an airport or on board an aircraft. More Like This Headnote

Transportation Law > Air Transportation
**HN6** ⯆ Air carrier means any citizen of the United States who undertakes, whether directly or indirectly or by a lease or any other arrangement to engage in air transportation. More Like This Headnote

Transportation Law > Air Transportation > Personal Injury & Property Damage
Governments > Legislation > Statutes of Limitations > Time Limitations
**HN7** ⯆ Article 29 of the Warsaw Convention establishes a statute of limitations for claims for damages for loss: (1) the right to damages shall be extinguished if an action is not brought within two years, reckoned from the date of arrival at the destination, or from the date on which the aircraft ought to have arrived, or from the date on which the transportation stopped. (2) The method of calculating the period of limitation shall be determined by the law of the court to which the case is submitted. More Like This Headnote

Transportation Law > Air Transportation > Prices, Routes & Services
**HN8** ⯆ Where customers engage carrier to ship goods by air, any storage is temporary and incidental and does not indicate that the carrier is a warehouseman. More Like This Headnote

Transportation Law > Air Transportation > Personal Injury & Property Damage
Governments > Legislation > Statutes of Limitations > Statutes of Limitations Generally
**HN9** ⯆ Under the Warsaw Convention, the statute of limitations begins to run from the

Get a Document - by Citation - 1988 U.S. Dist. LEXIS 4027

Case 3:04-cv-30248-RGS    Document 4    Filed 12/29/2004    Page 10 of 16

Page 3 of 8

date on which the transportation stopped or the shipment should have arrived, and is calculated according to the law of the court to which it is submitted. More Like This Headnote

Transportation Law > Air Transportation > Personal Injury & Property Damage
Governments > Legislation > Statutes of Limitations > Statutes of Limitations Generally

HN10 At the latest, the limitations period in the Warsaw Convention begins to run once a party with enforceable rights under a carriage contract knows or has reason to know something has gone wrong with the shipment, be it misdelivery, loss or delay. More Like This Headnote

**COUNSEL:** [*1]

Ansel B. Chaplin, for Plaintiff.

Michael C. Lehane, Esq., Emery Air Freight: Stephen C. Fulton, Esq. for Defendant.

**OPINIONBY:** SARIS, Magistrate

**OPINION:** FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER RE: ENTRY OF JUDGMENT

PATTI B. SARIS, United States Magistrate

This action involves the loss of a computer disk drive which was supposed to be transported from Salem, New Hampshire, to Milan, Italy. The parties consented to trial before a United States Magistrate, and the trial was held on March 21, 1988. Valerie Griffin, the corporate secretary/office manager of the plaintiff Quantime Corporation ("Quantime"), testified on behalf of (Quantime), and William R. Mottla, the director of operations of Donovan-Mayflower, testified on behalf of defendants W. J. Donovan, Inc. and Aero Mayflower Transit Company, Inc. ("Donovan"). No witnesses testified on behalf of defendant Emery Air Freight, Inc. ("Emery").

After a review of the evidence, the pleadings and the stipulated facts, the Court orders entry of judgment on behalf of defendants on the ground that the claims are time-barred.

FINDINGS OF FACT

In October, 1983, Quantime ordered a computer disk drive from Digital Equipment Corporation ("DEC") for [*2] resale and delivery to a Quantime customer in Milan, Italy. DEC hired Donovan to transport and deliver the equipment to Emery at Emery's facility at Logan Airport in East Boston, Massachusetts.

In December, 1983, William Springer, then a vice-president of Quantime, contacted Larry Wick of Emery, and arranged that Emery would receive a number of items of computer equipment, including the disk drive, from DEC for shipment to its overseas customers. He asked Wick to hold the disk drive at Emery's facility at Logan Airport until he could provide an export license for its shipment to Milan, Italy.

On January 3, 1984, DEC delivered the disk drive to Donovan in Salem, New Hampshire. The Donovan bill of lading acknowledged receipt of the disk drive from DEC, with the carrier signature of "T. J. Bailey," on January 3, 1984. The disk drive was stored in a Donovan facility in Westboro, Massachusetts, until January 5, 1984. According to Mottla, the normal procedure for delivery of DEC goods was that the computer parts would be delivered to the

Get a Document - by Citation - 1988 U.S. Dist. LEXIS 4027    Page 4 of 8

Case 3:04-cv-30248-RGS    Document 4    Filed 12/29/2004    Page 11 of 16

Donovan Westboro facility and then delivered to the consignee on the next day or following day.

The Donovan records indicate that the computer disk, which [*3] had the carrier number 283-4285, was delivered to Emery on January 5, 1984. The bill of lading carries the handwritten notation, "Revd. 1 Ctn 1/5/84 J Mily." The signature, "Mily," is not fully legible. The daily log of driver Bill Tocco indicates that he delivered "283-4285" from the "DEC account" to East Boston at 10:10 a.m. and departed at 10:20 a.m. The consignee on the DEC Bill of Lading was listed as "Quantime--Emery Wor[l]dwide Terminal--Export Dept/Attn: Larry Wick--Logan Intl Airport--East Boston Ma 02128." It was standard operating procedure for the driver to obtain the signatures of those receiving the goods on the bottom of the bills of lading.

Although no evidence was ever introduced concerning the identity of the person who signed the bill of lading, Donovan's records are persuasive evidence that the disk drive was delivered to Emery on January 5, 1984.

On February 23, 1984, Springer wrote a letter to Wick, which stated in relevant part:

Late last December when you handled a shipment to London for me there was a second shipment to Italy of a DEC disk drive which was delivered to you but I asked you to hold it as I did not have the necessary paperwork from Italy, its [*4] destination, to apply for an Export License.

You mentioned in early January that there would be no storage charges if the drive were there for just a few weeks. I never thought it would be there this long. I would like to know the following

-what are the storages to date?

-what is the rate to continue to store it for another month or two?

-what are the estimated freight charges to Milan, Italy.

Springer never received a response to the letter. According to the stipulation of the parties, "Mr. Springer would testify that as a result, sometime later, probably around April, 1984, he called Emery to further inquire. Emery was unable to locate any records pertaining to the . . . disk drive."

Springer then contacted DEC. DEC in turn contacted Donovan, obtained a copy of DEC's bill of lading, and on July 30, 1984, forwarded a copy of this bill of lading to Springer. On August 6, 1984, Springer wrote a letter to the claims department of Emery, which stated in relevant part:

In January, 1984 your office at Logan Airport in Boston received a Disk Drive (RA81) from Digital Equipment Corporation to be shipped, for us, to Italy. We asked you to hold the shipment until we received [*5] the Export Certificate. In February, I wrote the attached letter to Larry Wick to which I received no response.

About April, as a result of conversations with John Walker it became apparent that you did not have the disk in question! I requested proof of delivery to you from DEC and just the other day received the attached delivery receipt.

The value of the disk drive is $ 14,378.80. By this letter, we wish to make a claim to Emery for this amount. (Emphasis added.)

Get a Document - by Citation - 1988 U.S. Dist. LEXIS 4027

Case 3:04-cv-30248-RGS    Document 4    Filed 12/29/2004    Page 12 of 16

Page 5 of 8

On November 6, 1984, Emery sent Springer a letter refusing to honor the claim on the grounds that its "personnel at the Boston terminal have no record of receiving this shipment," and the signatures on the invoice could not be identified as being the signatures of Emery employees.

On November 7, 1984, Paul Barney of DEC spoke to Linda Miller of Donovan, about the "status of the equipment"; on November 8, 1984, Miller forwarded to Barney a certified copy of DEC's bill of lading.

At no time prior to the commencement of this lawsuit did Quantime provide written notice to Donovan of its loss or claim.

The disk drive was never delivered to the intended customer in Italy.

The initial complaint named only Donovan as a **[*6]** defendant and was filed on May 6, 1986. Later, on May 22, 1986, and again on August 28, 1986, plaintiff filed amended complaints which did not name Emery as a defendant. On October 28, 1986, plaintiff filed a third amended complaint which named Emery as a co-defendant.

QUANTIME'S CLAIM AGAINST DONOVAN

The claim for the loss of property has been brought under 49 U.S.C. § 11707, frequently termed the Carmack Amendment, which governs the liability of common carriers under bills of lading. *HN1* Section 11707(e) provides:

A carrier may not provide by rule, contract, or otherwise, a period of less than 9 months for filing a claim against it under this section and a period of less than 2 years for bringing a civil action against it under this section. The period for bringing a civil action is computed from the date the carrier gives a person written notice that the carrier has disallowed any part of the claim specified in the notice.

The parties agree that, at all material times, the shipment of the disk drive was subject to I.C.C. HGB-400-B. Item 19(a) provides that a claim for loss will not be voluntarily paid by a carrier unless filed in writing within the specified time limits. Item **[*7]** 19(b) outlines the minimum filing requirements as follows:

A communication in writing from a claimant filed with carrier within the time limits specified in the bill of lading or contract of carriage or transportation and (i) containing facts sufficient to identify the shipment (or shipments) of property involved, (ii) asserting liability for alleged loss, damage, injury, or delay, and (iii) making claim for the payment of a specified or determinable amount of money, will be considered as sufficient compliance with the provisions for filing claims embraced in the bill of lading or other contract of carriage.

Item 19(k) specifies the time limit for filing claims as follows:

As a condition precedent to recovery, a claim for any loss, damage, injury, or delay, must be filed in writing with carrier within nine (9) months after delivery to consignee as shown on bill of lading, or in case of failure to make delivery, then within nine (9) months after a reasonable time for delivery has elapsed; and suit must be instituted against carrier within two (2) years and one (1) day from the date when notice in writing is given by carrier to the claimant that carrier has disallowed the claim **[*8]** or any part or parts thereof specified in the notice. Where a claim is not filed or suit is not instituted thereon in accordance with the foregoing provisions, carrier will not be liable and such claim will not be paid.

*HN2* If a claim is not brought within the time specified by the relevant tariff, a subsequent action for damages under § 11707 is barred. Calpro Co. v. Consol. Engineering Co. of

Get a Document - by Citation - 1988 U.S. Dist. LEXIS 4027						Page 6 of 8

Case 3:04-cv-30248-RGS    Document 4    Filed 12/29/2004    Page 13 of 16

Georgia, 502 F. Supp. 707, 711 (N.D. Ga.1980). See also Culver v. Boat Transit, Inc., 782 F.2d 1467, 1469 (9th Cir. 1986); Ryder Truck Lines, Inc. v. Consolidated Rail Corp., 580 F. Supp. 22, 23-24 (N.D. Ill. 1984).

Quantime did not provide written notice to Donovan of its claim until it commenced this lawsuit on May 6, 1986. Therefore, the nine-month period for filing a claim established by the applicable tariff and statute was violated. Quantime contends, however, that DEC placed Donovan on notice of the loss when it sought copies of its bill of lading some time prior to July 30, 1984 and again on November 7, 1984, and inquired into the status of the equipment. Even assuming that DEC's oral inquiry was made within nine months after a reasonable time for delivery had elapsed, these **[*9]** inquiries do not meet the minimum requirement for filing a written claim established by Item 19 of the tariff.

Moreover, it is established that HN3 mere knowledge of damage or loss is not enough to toll the time requirement. See Calpro Co. v. Consol. Engineering Co. of Georgia, 502 F. Supp. at 712, See also Perini-North River Associates v. Chesapeake & Ohio Railway Co., 562 F.2d 269, 273 (3d Cir. 1977). Even direct oral notice of claim will not suffice. Penn State Laundry Co. v. Pennsylvania Railroad Co., 134 F. Supp. 955, 956-57 (W.D. Pa. 1955).

Finally, even assuming Quantime's claim were timely, Donovan has introduced sufficient evidence, particularly the bill of lading and the daily log of its driver, to establish that it delivered the disk drive to co-defendant Emery. Therefore, the Court finds that on the merits, plaintiff cannot prevail on its claim against Donovan.

QUANTIME'S CLAIM AGAINST EMERY

Emery argues that Quantime's claim is barred by the two year limitations period established under the provisions of the Convention for Unification of Certain Rules relating to International Transportation by Air, frequently termed the "Warsaw Convention" (reprinted after **[*10]** 49 U.S.C. § 1502).

HN4 Article I of the Warsaw Convention states in pertinent part:

(1) This convention shall apply to all international transportation of . . . goods performed by aircraft for hire. . . .

(2) For the purposes of this convention the expression "international transportation" shall mean any transportation in which, according to the contract made by the parties, the place of departure and the place of destination . . . are situated . . . within the territories of two High Contracting Parties. . . .

There is no dispute that the transportation by air of the disk drive from Boston, Massachusetts, USA to Milan, Italy, would have been covered by the Warsaw Convention, and the parties stipulate that Emery is an indirect air carrier under the Federal Aviation Act of 1958, 49 U.S.C. § 1301(3). n1 HN5 Article 18(1) of the Warsaw Convention provides that an air carrier will be "liable for damage sustained in the event of the . . . loss of . . . any goods, if the occurrence which caused the damage so sustained took place during the transportation by air." The term "transportation by air" is a term of art and is defined as follows: "The transportation by air within the meaning of the **[*11]** preceding paragraph shall comprise the period during which the baggage or goods are in charge of the carrier, whether in an airport or on board an aircraft. . . ." Article 18(2) (emphasis added).

n1 HN6 "'Air carrier' means any citizen of the United States who undertakes, whether directly

Get a Document - by Citation - 1988 U.S. Dist. LEXIS 4027

Case 3:04-cv-30248-RGS   Document 4   Filed 12/29/2004   Page 14 of 16

Page 7 of 8

or indirectly or by a lease or any other arrangement to engage in air transportation. . . ." See also 14 C.F.R. § 296.1(e) (definition of indirect air carrier).

HN7 Article 29 establishes a statute of limitations for claims for damages for loss:

(1) The right to damages shall be extinguished if an action is not brought within 2 years, reckoned from the date of arrival at the destination, or from the date on which the aircraft ought to have arrived, or from the date on which the transportation stopped.

(2) The method of calculating the period of limitation shall be determined by the law of the court to which the case is submitted.

This article "clearly provides that an action brought pursuant to the Warsaw Convention must be commenced within two years." Data General Corp. v. Air Exp. Intern. Co., 676 F. Supp. 538, 539 (S.D.N.Y. 1988).

Plaintiff seeks to avoid the two-year statute of limitations [*12] by arguing that Emery was acting as a warehouseman--not an indirect air carrier--when the loss occurred. Cf. Mass. Gen. L. ch. 105, § 1 (a warehouseman is an entity "engaged in the business of storing goods for hire"). However, the evidence introduced at trial conclusively demonstrates that Quantime hired Emery to transport the disk drive by air to Milan, Italy, and not to store the goods.

On its purchase order to DEC, Quantime specified as shipping instructions: "Shipping and forwarding agents are Emery--Production London to confirm shipping route--Delivery should be Free Domicile Milan--on 'economy service rates'." In the February 23, 1984 letter, Springer wrote to Larry Wick of Emery's Export Department concerning a "second shipment to Italy of a DEC disk drive which was delivered to you but I asked you to hold it as I did not have the necessary paper work from Italy, its destination, to apply for an Export License"; in the letter, Springer noted, "You mentioned in early January that there would be no storage charges if the drive were there for just a few weeks." (Emphasis added). Finally, on August 6, 1984, Springer again wrote Emery: "In January, 1984, your office at [*13] Logan Airport in Boston received a Disk Drive (RA81) from Digital Equipment Corporation to be shipped, for us, to Italy." (Emphasis added.) This evidence establishes that, at the time Emery received the disk drive, both parties intended that Emery would be acting in the capacity as an indirect air carrier, and to the extent the disk drive was stored, the storage at the airport was incidental to the transportation by air.

Although on February 23, 1984 Quantime was making inquiries concerning storage costs because of the length of time necessary to obtain the export license, there is no evidence that the parties had modified their contractual arrangements in such a way that Emery was acting as a warehouseman at the time of the loss. See Royal Insurance v. Amerford Air Cargo, 654 F. Supp. 679, 681 (S.D.N.Y. 1987) HN8 (where customers engage carrier to ship goods by air, any storage is "temporary and incidental" and does not indicate that the carrier is a warehouseman); Cf. Berman v. Trans World Airlines, 421 N.Y.S. 2d 291, 293 (1979) (in determining whether a loss of baggage occurred during "transportation by air," the court must determine the degree of control of the carrier; [*14] the location of the loss; and "the activity the party was engaged in at the time of the accident").

HN9 Under the Warsaw Convention, the statute of limitations begins to run "from the date on which the transportation stopped" or the shipment should have arrived, and is calculated according to the law of the court to which it is submitted.

HN10 At the latest, the limitations period in the Warsaw Convention begins to run once a party with enforceable rights under a carriage contract knows or has reason to know something has gone wrong with the shipment, be it misdelivery, loss or delay. Magnus

Get a Document - by Citation - 1988 U.S. Dist. LEXIS 4027    Page 8 of 8

Case 3:04-cv-30248-RGS   Document 4   Filed 12/29/2004   Page 15 of 16

Electronics, Inc. v. Royal Bank of Canada, 611 F. Supp. 436, 441 (N.D. Ill. 1985); Cf. Gore v. Daniel O'Connell's Sons, Inc., 17 Mass. App. 645, 461 N.E.2d 256, 259 (1984) (cause of action accrues when the "injured party knew, or in the exercise of reasonable diligence, should have known of the factual basis for the cause of action").

Plaintiff concedes it became aware of the loss by April, 1984. Indeed, plaintiff should have been aware by late March, when there was no response to the February 23, 1984 letter, that something had gone wrong with the shipment. The initial complaint was filed **[*15]** on May 6, 1986, but named only Donovan as defendant. The third amended complaint for the first time named Emery as a defendant on October 28, 1986. Even if the claim against Emery related back to the initial claim under Fed. R. Civ. P. 15(c), it would be barred by the two-year statute of limitations period. It must be conceded that "there is an element of arbitrariness here, but that is a characteristic of any limitations period. And it is an arbitrariness imposed by the legislature and not by the judicial process." Schiavone v. Fortune, 54 U.S.L.W. 4692, 4695 (U.S. June 18, 1986).

CONCLUSION

Judgment shall be entered for defendants.

Service: **Get by LEXSEE®**
Citation: **1988 usdistlexis 4027**
View: **Full**
Date/Time: Wednesday, December 29, 2004 - 9:59 AM EST

* Signal Legend:
● - Warning: Negative treatment is indicated
⚠ - Caution: Possible negative treatment
◆ - Positive treatment is indicated
🅐 - Citing Refs. With Analysis Available
ⓘ - Citation information available
* Click on any *Shepard's* signal to *Shepardize®* that case.

About LexisNexis | Terms and Conditions

Copyright © 2004 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.

- 8 -

## CERTIFICATE OF SERVICE

I, Sara Discepolo, hereby certify that on this 29th day of December, 2004, I electronically filed the foregoing *Memorandum of Law in Support of Defendant's Motion to Dismiss* together with all supporting documentation, as well as served the same upon all counsel/parties of record by mailing a copy of same postage prepaid, first class to:

Kevin C. Maynard
Bulkley, Richardson and Gelinas, LLP
1500 Main Street, Suite 2700
Springfield, MA 01115-5507


　　　　　　　　　　　　　　　　　　　　*/s/ Sara Discepolo*
　　　　　　　　　　　　　　　　　　　　Sara Discepolo