

BULKLEY, RICHARDSON AND GELINAS, LLP

LAW OFFICES
1500 MAIN STREET, SUITE 2700
POST OFFICE BOX 15507
SPRINGFIELD, MA 01115-5507

TEL: (413) 781-2820
FAX: (413) 272-6804

KEVIN C. MAYNARD
DIRECT DIAL (413) 272-6244
KMAYNARD@BULKLEY.COM

August 22, 2003

**Via Certified Mail**
**No. 7002 0860 0002 2489 0556**

Carol Marcus-Stanley
Senior Legal Analyst
DHL Worldwide Express, Inc.
1200 South Pine Island Road, Suite 600
Plantation, FL 33324

Re:    Ruggers, Inc.

Dear Ms. Marcus-Stanley:

I write on behalf of Ruggers, Inc. ("Ruggers") regarding claims by Ruggers against DHL Worldwide Express, Inc. ("DHL"). This is a demand for relief including relief pursuant to the Massachusetts Unfair Business Practices Act, Mass. Gen. Laws ch. 93A, §§ 2 and 11.

Ruggers, located in West Springfield, Massachusetts, is in the business of selling rugby gear, supplies and clothing.

In early 2002, Ruggers ordered from a regular supplier, Red Chile LTD of Hong Kong, approximately 500 custom-made rugby jerseys. On February 2, 2002, as instructed by Ruggers, Red Chile LTD shipped 30 of these jerseys for delivery direct to Ruggers' customer, Alex Smith of Naples Rugby Club, Naples, Florida. Also on February 2, 2002, Red Chile LTD shipped approximately 470 jerseys for delivery to Ruggers. This larger shipment was sent to JFK Airport in New York to await clearance to Ruggers.

The 30-jersey shipment bound for Naples, Florida was transported from Hong Kong by DHL and apparently arrived in Cincinnati, Ohio on or about February 7, 2002. Entry of the shipment was apparently rejected by U.S. Customs on February 11, 2002 because the shipment was not accompanied by a visa.

After apparently attempting to contact the shipper, DHL contacted Ruggers on or about February 13, 2002, regarding the need for a visa for the 30-jersey shipment. A Ruggers'

BULKLEY, RICHARDSON AND GELINAS, LLP

Carol Marcus-Stanley
August 22, 2003
Page 2

representative explained to DHL that Ruggers had received a visa for all of the jerseys ordered, but that the visa had been received as one document authorizing clearance of all 500 jerseys.

On or about February 15, 2002, Ruggers sent the 500-piece visa to DHL, but only after explicitly instructing DHL's customs department that if the visa could not be used in increments – that is, if the 500-piece visa had to be used in its entirety for release of the 30 pieces – then DHL was to return the visa to Ruggers. Ruggers further instructed DHL that, in that event, the 30-piece order was to be returned to Hong Kong, and Ruggers would work to obtain a visa specifically for that smaller order.

Clearly, Ruggers was particularly interested in obtaining clearance of the 470-piece shipment, and was not interested in sacrificing receipt of that larger shipment for release of the 30-piece shipment.

Notwithstanding Ruggers' specific instructions, and contradicting both those instructions and reasonable standards of care to be exercised by a carrier, DHL applied the 500-piece visa to the 30-piece shipment, ultimately delivered that shipment to the Naples, Florida customer, and left Ruggers without the means to obtain immediate clearance of the 470-piece shipment.

Meanwhile, that larger shipment had been transported by DHL to New York. Once Ruggers and DHL came to understand jointly that the 500-piece visa was no longer available to obtain clearance of that shipment, DHL agreed to hold the shipment until a further visa could be obtained by Ruggers, and to process the entry at no further charge, if Ruggers could obtain such a further visa.

In early 2003, Ruggers did in fact identify a source for an additional visa, but before obtaining it contacted DHL to confirm the status of the shipment held by DHL. DHL informed Ruggers, notwithstanding DHL's previous promise to hold the goods in a bonded facility in New York, that the shipment had been returned by DHL to Hong Kong, and had been destroyed in Hong Kong by DHL. Clearly, this was against the instructions of Ruggers, violated DHL's promise to hold the shipment, and contradicted the reasonable standards of care applicable to DHL in the circumstance.

On or about July 1, 2003, Ruggers' President, Vic Thomas, talked with you by telephone about the matter, described the details above, and proposed to resolve the matter upon DHL's agreement merely to reimburse Ruggers the value of the goods destroyed – $16,619.80. In the course of that conversation, you promised Mr. Thomas that he would hear from you shortly. Mr. Thomas confirmed that conversation and his proposal by his letter to you dated July 8, 2003.

BULKLEY, RICHARDSON AND GELINAS, LLP

Carol Marcus-Stanley
August 22, 2003
Page 3

    Also on July 8, after attempting again to telephone you, Mr. Thomas e-mailed you to confirm your receipt of his faxed letter and to remind you of his need to resolve the matter within seven (7) days. On July 10, you e-mailed Mr. Thomas, asking that he re-send his faxed letter, and providing Mr. Thomas a new address, telephone number and fax number for the apparently relocated offices of DHL. Mr. Thomas re-sent the letter as requested.

    Despite your promise to contact Mr. Thomas shortly after your July 1 conversation to discuss the matter further, he and Ruggers have never heard from you or anyone else at DHL again.

    Having reached the point of being forced to retain us as counsel in the matter, Ruggers is no longer amenable to resolving the dispute simply by accepting payment of the $16,619.80 it paid for the jerseys DHL destroyed. In addition to that amount, Ruggers hereby demands payment of $20,000.00 in profits it would have earned on the sales of those 470 jerseys, plus $2,500.00 in legal fees. Thus, Ruggers now demands payment totaling $39,119.80.

    If this matter can finally be resolved now, Ruggers is willing to forego recovery from DHL of additional damage arising from the harm to its reputation that resulted from an inability to sell the highly marketable and much desired custom-made jerseys it expected to have available. Ruggers is also willing to forego the additional relief to which it is entitled pursuant to the Massachusetts Unfair Business Practices Act, Mass. Gen. Laws ch. 93A. Pursuant to that statute, if Ruggers successfully brings a claim for violation, it will recover all of its attorneys' fees in the matter. Moreover, upon a finding that DHL's violation was willful, it will be entitled to a doubling or trebling of its actual damages.

    DHL's liability in this matter is clear. DHL can only make matters worse by continuing to resist attempts to resolve the dispute without litigation and by forcing Ruggers to take legal action. Be assured, however, that Ruggers is prepared to take whatever steps are necessary to see that DHL makes it whole. If legal action is necessary, Ruggers will seek the advantage of any and all remedies available to it.

    I look forward to receiving your response within 14 days, and no later than September 5, 2003.

Very truly yours,

*Kevin C. Maynard*
Kevin C. Maynard

KCM/hf