IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
WESTERN DIVISION

Civil Action No. 04-30248-MAP

| | | |
|---|---|---|
| RUGGERS, INC., | ) | |
|         Plaintiff | ) | |
| | ) | |
| v. | ) | AMENDED COMPLAINT |
| | ) | [JURY TRIAL DEMANDED] |
| DHL EXPRESS (USA), INC., | ) | |
|         Defendant | ) | |

## Introduction

1.     This is an action to recover damages arising from the negligent performance by DHL of carrier and bailment services rendered to plaintiff Ruggers, Inc.

## Parties

2.     Plaintiff Ruggers, Inc. ("Ruggers") is a Massachusetts corporation with a usual place of business at 1700 Riverdale Street, West Springfield, Hampden County, Massachusetts.

3.     Defendant DHL Express (USA), Inc. ("DHL") is a Delaware corporation with a usual place of business at 50 California Street, San Francisco, California.

## Factual Allegations

4.     Ruggers is in the business of selling rugby and other sports equipment, clothing and accessories to buyers world-wide.

5.     DHL is an international provider of express delivery services.

6.     In or about January, 2002, Ruggers ordered from a regular supplier, Red Chile LTD of Hong Kong, approximately 500 custom-made rugby jerseys.

7.      On or about February 2, 2002, as instructed by Ruggers, Red Chile LTD shipped 30 of these jerseys directly to Ruggers' customer, Alex Smith of Naples Rugby Club, Naples, Florida ("the Naples shipment").

8.      Also on February 2, 2002, Red Chile LTD shipped approximately 470 jerseys for delivery to Ruggers at its West Springfield address ("the West Springfield shipment"). Ruggers paid Red Chile LTD $16,619.80 for the goods included in that shipment.

9.      Upon information and belief, the larger of the two shipments, the West Springfield shipment, was transported by Asiana Airlines to JFK Airport in New York to await clearance there through Customs.

10.     The 30-jersey Naples shipment was transported by DHL from Hong Kong and, upon information and belief, arrived in Cincinnati, Ohio on or about February 7, 2002.  Entry of the Naples shipment was rejected by U.S. Customs officials on February 11, 2002 because the shipment was not accompanied by an appropriate visa.

11.     DHL contacted Ruggers on or about February 13, 2002, regarding the need for a visa for the Naples shipment.  A Ruggers' representative reported to DHL at that time that Ruggers had obtained a visa for all 500 jerseys ordered from Red Chile LTD, but that the visa had been obtained as one document authorizing clearance through Customs of all 500 jerseys.

12.     On or about February 15, 2002, Ruggers sent the 500-piece visa to DHL after instructing DHL that if the visa could not be used in increments, and if the 500-piece visa had to be used in its entirety for release of the 30-piece Naples shipment, then DHL was to return the visa, unused, to Ruggers.  Ruggers further instructed DHL that, in that event, DHL was to return the Naples shipment to Hong Kong, and that Ruggers would work to obtain a separate visa specifically for that smaller shipment.

13.     As DHL knew or should have known, Ruggers' intent was that if the 500-piece visa could not be used in increments, it would apply that visa to the West Springfield shipment, and not use the 500-piece visa in its entirety on a 30-piece shipment.

14.     Upon information and belief, DHL applied the 500-piece visa in its entirety to the 30-piece Naples shipment, and ultimately delivered that shipment on or about February 21, 2002 to the Naples, Florida customer.

15.     DHL's use of the visa in this manner contradicted Ruggers' specific instructions and violated reasonable standards of care to be exercised by a carrier.

16.     Meanwhile, coming to understand jointly with Ruggers that the 500-piece visa was no longer available to obtain clearance of the larger West Springfield shipment, and as an accommodation to Ruggers, DHL agreed in or about May 2002 to remove that shipment from Customs as consignee and hold it on Ruggers' behalf in a bonded facility at or near JFK Airport until Ruggers could obtain a further visa.  The goods were in fact collected by DHL pursuant to that agreement.  See Exhibit A hereto, incorporated herein by reference.

17.     In early 2003, Ruggers did in fact identify a source for an additional visa to use for the West Springfield shipment.  Before obtaining that visa, Ruggers contacted DHL to confirm the status of the West Springfield shipment.  DHL informed Ruggers that, notwithstanding DHL's earlier promise to hold the goods in a bonded facility, DHL had returned the goods to Hong Kong, and that DHL had destroyed the goods there.

18.     Notwithstanding demands by Ruggers, DHL has failed and refused to acknowledge its liability for or to pay Ruggers the cost of the goods destroyed, the profits lost upon the inability of Ruggers to sell those goods, or any other portion of the substantial damages incurred by Ruggers.

## COUNT ONE
(Negligence as Carrier)

19.     Ruggers incorporates by reference the allegations of Paragraphs 1 through 18 above.

20.     By its conduct described above, DHL was negligent in performance of its duties and responsibilities as a carrier of Ruggers' goods.

21.     As a direct and proximate result of DHL's negligence, Ruggers has incurred substantial damage in an amount to be proven at trial.

## COUNT TWO
(Negligent Bailment)

22.     Ruggers incorporates the allegations of Paragraphs 1 through 21 above.

23.     By its conduct described above, DHL created a bailment relationship with respect to the West Springfield shipment.

24.     By its conduct, DHL was negligent in its performance of its duties and responsibilities as bailee.

25.      As a direct and proximate result of DHL's negligence, Ruggers has incurred substantial damage in an amount to be proven at trial.

## COUNT THREE
(Breach of Contract)

26.     Ruggers incorporates the allegations of paragraphs 1 through 25 above.

27.     By its conduct described above, DHL agreed to apply Ruggers' 500-piece visa to the Naples shipment only if it could be applied incrementally, such that it could also be applied to the West Springfield shipment.

28.     By its conduct, DHL further agreed that it would hold Ruggers' West Springfield bonded facility until Ruggers had the opportunity to obtain a further visa for application to the West Springfield shipment.

#298244

4

29.    By its conduct described above, DHL breached these agreements.

30.    As a direct and natural result of DHL's breaches, Ruggers has incurred substantial damage in an amount to be proven at trial.

COUNT FOUR
(Violation of G.L. 93A)

31.    Ruggers incorporates the allegations of Paragraphs 1 through 30 above.

32.    By its conduct described above, DHL has violated Massachusetts General Laws chapter 93A, §§2 and 11.

33.    DHL's violation of G.L. c. 93A has been willful.

34.    As a direct and proximate result of DHL's violation, Ruggers has incurred substantial damage in an amount to be proven at trial.

COUNT FIVE
(Conversion)

35.    Ruggers incorporates the allegations of Paragraphs 1 through 34 above.

36.    By its conduct described above, DHL committed a conversion of plaintiff's property.

37.    As a direct and proximate result of DHL's conversion, Ruggers has incurred substantial damage in an amount to be proven at trial.

WHEREFORE, Ruggers demands relief in the form of a judgment in its favor as follows:

    a.    On Counts One, Two, Three, and Four, an award of its actual damages;

    b.    On Count Four, an award of additional damages in an amount not less than two nor greater than three times the amount of actual damages;

    c.    On Count Four, an award of reasonable attorneys' fees;

    d.    Costs;

    e.    Interest; and

    f.    Such other relief as the Court deems proper.

<u>Jury Demand</u>

Ruggers hereby demands a trial by jury as to all issues so triable.

The Plaintiff
RUGGERS, INC.
By Its Attorneys:


/s/Kevin C. Maynard
Kevin C. Maynard
 BBO No. 550669
Bulkley, Richardson and Gelinas, LLP
1500 Main Street, Suite 2700
Springfield, MA  01115-5507
Tel.: (413) 272-6244
Fax: (413) 272-6804

Dated:  May 19, 2005

#298244