UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

Civil Action No. 04-30248-MAP

| | |
|---|---|
| RUGGERS, INC., ) | |
|       Plaintiff ) | |
| ) | |
| v. ) | JOINT PRETRIAL |
| ) | MEMORANDUM |
| DHL EXPRESS (USA), INC., ) | |
|       Defendant ) | |

**I.    SUMMARY OF EXPECTED EVIDENCE**

    **A.    Ruggers, Inc.:**

The plaintiff, Ruggers, Inc. ("Ruggers") expects the evidence to show that Ruggers placed two orders with a Hong Kong supplier, Red Chili, Ltd. for rugby shirts to be re-sold by Ruggers. One order ("the Smaller Shipment") was for 30 custom shirts and was to be shipped directly to Ruggers' customer in Naples, Florida. The other order ("the Larger Shipment") was for 470 shirts and was to be shipped to Ruggers' store in West Springfield, Massachusetts. DHL was the shipper for the Smaller Shipment. Another shipper was used for the Larger Shipment.

When the Smaller Shipment arrived in Cincinnati from Hong Kong, it could not immediately clear U.S. Customs because it was not accompanied by a required visa. DHL contacted Ruggers, which provided DHL with a 500-piece visa purchased by it and instructed DHL that the visa was to be used for the Smaller Shipment only if it could be used incrementally, and could also be used for the Larger Shipment subsequently to arrive in New York. Contrary to that instruction, DHL used the 500-piece visa to clear the 30-piece Smaller Shipment, such that when the Larger Shipment arrived in New York, it could not clear U.S. Customs and no visa was immediately available for use in clearing Customs.

The evidence will show that, recognizing the situation in which it had placed Ruggers, DHL voluntarily undertook to remove the Larger Shipment from U.S. Customs on April 19, 2002 and agreed to hold it in its own bonded warehouse until a proper visa could be obtained.  DHL informed Ruggers that it had done so by letter dated May 10, 2002.

On May 21, 2002, without the permission of or notification to Ruggers, the 470-shirt Larger Shipment was returned by DHL to Hong Kong, where it was subsequently lost, stolen or destroyed.

Ruggers was first informed by DHL of the return of the Larger Shipment to Hong Kong and its loss in May 2003 when Ruggers inquired into the status of the shipment given the availability to it of visa documentation at that time.

The evidence will show that Ruggers was damaged by the loss and unavailability of the Larger Shipment and otherwise by the conduct of DHL through the loss of the amounts paid for those shirts and the shipment thereof, including the cost of the 500-piece visa, and by the loss of profits that DHL would have earned upon the sale of those shirts.

Ruggers further expects the evidence to show that DHL's conduct constituted a willful violation of Mass. Gen. Laws Ch. 93A.

B.      **DHL Express (USA), Inc.:**

The defendant, DHL Express (USA), Inc., (hereinafter "DHL") expects the evidence to show that the plaintiff placed two orders with its Hong Kong supplier, Red Chili, Ltd. ("Red Chili"), for the shipment of Rugby shirts.  These two orders were placed by different employees of the plaintiff, Ruggers, Inc. ("Ruggers") and were for different amounts: one was for 30 custom rugby shirts and was to ship directly to the consumer in Naples, FL (hereinafter the "small shipment") and the other was for 470 rugby shirts and was to ship to the plaintiff's store (hereinafter the "large shipment").  Two different shippers were used to transport these

shirts, with DHL shipping the small shipment. When the small shipment arrived from Hong Kong, it was not accompanied by the required visa and, as a result, could not clear U.S. Customs. DHL contacted Ruggers about this discrepancy and Ruggers, in turn, contacted Red Chili about getting a visa. Red Chili, upon seeing a total order for 500 shirts, then issued a visa for 500 shirts rather than two separate visas.

DHL further expects the evidence to show that Ruggers was under a time crunch from its customer in Naples, FL because the custom rugby shirts were needed for an event to be held on a certain date. Thus, when the Ruggers employee provided DHL with a visa for clearing the smaller shipment, it was a visa for 500 shirts. Following the orders of Ruggers, DHL used the visa to clear the shipment and deliver the rugby shirts to its customer in Naples, FL. Unbeknownst to DHL at the time, the larger shipment, being shipped by another carrier, was also without the proper documentation. Ruggers attempt to use the visa given to DHL for the larger shipment was denied because a visa can only be used for one shipment. U.S. Customs retained possession of the shirts for approximately two months to allow Ruggers to secure the proper documentation. When it could not get the documents, U.S. Customs threatened to destroy the merchandise. At that point, Ruggers requested that DHL take possession of the shirts and hold on to them to prevent U.S. Customs from destroying the shirts. DHL agreed, in April 2002, to hold onto the shirts for a reasonable period of time. Approximately, one year later, Ruggers contacted DHL to retrieve the shirts and DHL informed them that the shirts were no longer in its possession.

DHL expects the evidence to show that DHL properly followed the instructions of Ruggers in using the visa for the small shipment. DHL also expects the evidence to show that to the extent DHL assumed a duty to hold onto the merchandise that there was no expectation that they would hold onto the shirts indefinitely but that they would simply hold onto them for a

reasonable period of time, which they did. Moreover, that Ruggers did not inquire with DHL about the shirts until a year later, Ruggers had no reasonable expectation that DHL was still in possession of the shirts.

Lastly, DHL expects the evidence to show that in no way did its actions constitute an unfair or deceptive business practice in violation of G.L. c. 93A.

## II.   FACTS ESTABLISHED BY PLEADINGS OR STIPULATIONS

By response to requests for admissions, the following facts are established:

A.   The removal by DHL from Customs of the Second Shipment occurred on or after April 19, 2002.

B.   DHL returned the Second Shipment to Hong Kong within 33 days of removing the shipments from Customs.

C.   DHL returned the Second Shipment to Hong Kong within 12 days of the date of a letter from DHL to Ruggers in which DHL advised that it removed the shipment from Customs "to hold on your behalf until another visa can be obtained."

D.   Ruggers was first informed by DHL in May 2003 of DHL's return of the Larger Shipment to Hong Kong.

The parties will continue to work prior to trial to establish additional facts by stipulation.

## III.   CONTESTED ISSUES OF FACT

1.   Whether DHL was instructed by Ruggers to apply the 500-piece visa to the Smaller Shipment;

2.   Whether DHL was instructed by Ruggers to apply the 500-piece visa to the Smaller Shipment only if it could be used incrementally such that it would also be available for use with the Larger Shipment;

    3.    Whether DHL agreed to hold the Larger Shipment only for some certain period of time before it would be returned or destroyed;

    4.    Whether DHL held the Larger Shipment for a reasonable period of time before it was returned to Hong Kong;

    5.    Whether DHL was reasonable in failing to inform Ruggers before May 2003 that the Larger Shipment was going to be or had been returned to Hong Kong.

### IV.   JURISDICTIONAL QUESTIONS

None.

### V.   QUESTIONS RAISED BY PENDING MOTIONS

The plaintiff, Ruggers, has no pending motions.

The defendant, DHL, has no pending motions but proposes a schedule to file a motion for summary judgment with such motion to be filed by June 2, 2006.

### VI.   ISSUES OF LAW

The defendant, DHL, believes that the plaintiff's claims are subject to the Warsaw Convention. See Convention for the Unification of Certain Rules Relating to International Transportation by Air, Oct. 12, 1929, 49 Stat. 3000, T.S.No. 876 (1934), reprinted in note following 49 U.S.C. § 40105 (hereinafter "Warsaw Convention" or "Convention").  Ruggers contends that the issue was resolved by the Court's denial of a motion to dismiss based on that argument.

### VII.   REQUESTED AMENDMENT TO THE PLEADINGS

None.

### VIII.   ADDITIONAL MATTERS IN AID OF DISPOSITION OF THE ACTION

The parties anticipate that motions in limine will be filed seasonably prior to trial, pursuant to the Court's Trial Order.  The parties are willing to participate in a settlement conference before the Magistrate Judge if such a conference is available.

### IX. PROBABLE LENGTH OF THE TRIAL

The parties anticipate a jury trial lasting three days.

### X. WITNESSES TO BE CALLED AT TRIAL

**A.**  **Ruggers' Witnesses:**

1. Vic Thomas, Ruggers, Inc., 121 Union Street, West Springfield, Massachusetts;

2. Michael Brunelle, 370 Commonwealth Ave., Springfield, Massachusetts;

3. DHL Keeper of Records.

**B.**  **DHL's Witnesses:**

DHL incorporates by reference each of the witnesses listed on the plaintiffs' witness list. DHL also adds the following:

1. The following servants, agents, and/or employees of DHL or any of its affiliated companies: Alan Majchrzak, Theresa Floyd, Ralph Reinhardt, John Allen, Carolyn Johnson, Paula Berkeley, Andy Allen, Betty Molyneaux, Carol Marcus-Stanley, Ripple Wong, Amy Smith, Cari Grego, Shirley Mok, and Robin House;

2. Vic Thomas, Ruggers, Inc., 121 Union Street, West Springfield, MA 01089;

3. Michael Brunelle, 370 Commonwealth Avenue, Springfield, Massachusetts;

4. Alexander George Smith, Hammerhead Rugby Club S.W. Florida; Naples RFC, 1387 Marlin Drive, Naples FL 34104;

5. Red Chili Ltd., Room 1310B, Seaview Estate, # 2-8, Watson Road, North Point, Hong Kong;

6. Shawn Donnelly d/b/a Naples RFC, 1387 Marlin Drive, Naples FL 34104;

7. Columbia Logistics, Inc., 175-11 148 Road, Suite 202, Jamaica NY 11434.

DHL reserves the right to supplement this disclosure as information becomes available to them and to call rebuttal witnesses that it may not anticipate prior to trial.

## XI. PROPOSED EXHIBITS

### A. Ruggers's Exhibits:

1. Invoice from Red Chili, Ltd. to Naples RFC, dated February 2, 2002;

2. Invoice from Red Chili, Ltd. to Ruggers, dated January 18, 2002;

3. Airwaybill No. 198 0223 711, dated February 1, 2002, showing shipment from Red Chili, Ltd. to Naples RFC;

4. Airwaybill No. DIL-22217, dated February 27, 2002, showing shipment from Red Chili, Ltd. to Ruggers;

5. Textile Export License/Commercial Invoice ("visa") regarding 32 dozen men's 65% polyester, 35% cotton knitted shirts, dated January 30, 2002;

6. Textile Export License/Commercial Invoice ("visa") regarding 42 dozen men's 65% polyester, 35% cotton knitted shirts, dated November 15, 2001;

7. E-mail dated March 4, 2002 from Alan Majchrzak of DHL to Vic Thomas of Ruggers;

8. Letter addressed "Dear Helen" from Vic Thomas of Ruggers dated April 18, 2002;

9. Letter from Paula Berkeley of DHL to Vic Thomas of Ruggers dated May 10, 2002;

10. Letter from Carol Marcus-Stanley of DHL to Kevin C. Maynard, Esq. dated June 7, 2004;

11. E-mail string, May 1, 2003 – May 14, 2003 between Vic Thomas of Ruggers and Ralph Reinhardt, Alan Majchrzak and Andy Allen of DHL;

12. Ruggers product catalogs.

Ruggers reserves the right to supplement this list prior to trial upon reasonable notice.

**B.  DHL's Exhibits:**

1. Air Waybill Number DIL-22217, dated February 27, 2002, showing shipment from Red Chili to Ruggers Rugby Supply via carrier Asian Airlines (Defendant's Exhibit No. 1);

2. U.S. Customs Entry Application, dated February 7, 2002 (Defense Exhibit No. 2);

3. DHL phone log detailing conversations with DHL and interested parties about the smaller shipment (Defense Exhibit No. 3);

4. DHL Airwaybill No. 198 0223 711, dated February 1, 2002, showing shipment from Red Chili to Naples RFC (Defense Exhibit No. 4);

5. 2002 Visa from Guangdong Silk I&E Corp (Group) to Ruggers Rugby Supply for 32 dozen rugby shirts (Defense Exhibit No. 5);

6. Power of Attorney executed by Alexander George Smith (Defense Exhibit No. 6);

7. Invoice from Red Chili to Naples RFC for 30 Rugby shirts (Defense Exhibit No. 7);

8. Letter dated February 19, 2002, from Alexander Smith regarding his order with Ruggers and his desire to receive the shipment (Defense Exhibit No. 8);

9. DHL Worldwide Express Terms and Conditions of Carriage (Defense Exhibit No. 9);

10. Declaration and broker documents (Defense Exhibit No. 10).

DHL reserves the right to supplement these documents with any and all documents marked as exhibits at party and witness depositions.

DHL states that these exhibits are proposed exhibits and that the parties have not agreed upon the exhibits to be entered into evidence at trial.

DHL objects to the Plaintiff's Proposed Exhibits to the extent certain correspondence (Nos. 7-11 in the Plaintiff's Exhibits) constitutes hearsay and does not fall within an exception to the exclusion.

DHL reserves the right to object to any other exhibits until the time of trial.

Dated: April 25, 2006

| PLAINTIFF | DEFENDANT |
|---|---|
| Ruggers, Inc. | DHL Express (USA), Inc. |
| By Its Attorneys: | By Its Attorneys: |
| | |
| /s/ Kevin C. Maynard | /s/ Mark R. Freitas |
| Kevin C. Maynard, BBO #550669 | Mark R. Freitas, BBO #641205 |
| Bulkley, Richardson and Gelinas, LLP | Wilson Elser Moskowitz Edelman & Dicker LLP |
| 1500 Main Street, Suite 2700 | 155 Federal Street |
| Springfield, MA  01115-5507 | Boston, MA  02110 |
| Tel.: (413) 272-6244 | Tel.: (617) 422-5300, x.5403 |
| Fax:  (413) 272-6804 | Fax:  (617) 423-6917 |